UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PORT OF TACOMA,<br><br>        Plaintiff,<br><br>    v.<br><br>BURLINGTON ENVIRONMENTAL LLC,<br><br>        Defendant, Third-Party Plaintiff,<br><br>    v.<br><br>OCCIDENTAL CHEMICAL CORPORATION; and GENERAL METALS OF TACOMA INC.,<br><br>        Third-Party Defendants. | CASE NO. C24-5093 BHS<br><br>ORDER |

This matter is before the Court on Defendant Burlington Environmental LLC's motion to stay, Dkt. 44, and third-party Defendants Occidental Chemical Corporation and General Metals of Tacoma's motion to dismiss Burlington's third-party complaint against them, Dkt. 34. The Court determines that a stay until the completion of the Remedial Investigation and Feasibility Study (RI/FS) is not warranted, primarily because the parties

ORDER - 1

will have nearly a year between the study's completion at the end of 2024 and their bench trial in November 2025 to handle its results. Regarding the motion to dismiss, the Court concludes that Burlington's claims satisfy the strictures of Federal Rules of Civil Procedure 12(b)(6) and 14 and that allowing them to proceed at the same time as the Port of Tacoma's claims against Burlington avoids duplicative litigation.

## I. BACKGROUND

This case arises from the Port of Tacoma's efforts to clean the soil at its "Potter Property" from industrial contaminants. The Potter Property, as well as the surrounding properties in the broader Taylor Way and Alexander Avenue Fill Area (TWAAFA), have a long and complicated history of industrial contamination. As part of its effort to remediate the Potter Property soil, the Port of Tacoma sued Burlington Environmental LLC. Dkt. 1. The Port alleges that hazardous substances migrated from Burlington's property (Parcel A) to the Potter Property and contaminated the soil. *Id*. at 11. The Port's complaint focuses on petroleum-based "Light Non-Aqueous Phase Liquids" (LNAPL) contaminants, which it alleges leaked onto the Potter Property from unlined waste oil pits used by Burlington's predecessor on Burlington's property. *Id*. It seeks cost recovery for remediating the Potter Property Soil, a declaratory judgment under Washington's Model Toxics Control Act (MTCA), chapter 70A.305 RCW, and a declaratory judgment under 28 U.S.C. § 2201. *Id*. at 1. In terms of declaratory relief, it seeks a declaration "that Burlington is liable for all future remedial action costs incurred by Port to remediate the contamination caused by hazardous substances that have migrated from Parcel A to the Potter Property." *Id*. at 11.

1    Burlington promptly filed a third-party complaint against General Metals of
2    Tacoma, Inc., and Occidental Chemical Corporation. Dkt. 13. It alleges that the Potter
3    Property contains commingled contamination from hazardous substances including from
4    auto fluff and lime solvent sludge from operations by General Metals and by Occidental's
5    predecessor. It seeks "current and future remedial action costs associated with the broad
6    'hazardous substances' incurred" in remediating the contamination at the Potter Property
7    from General Metals and Occidental. Dkt. 53 at 2 (quoting Dkt. 13, Third-Party
8    Complaint, at 19–20).

9    As the parties litigate, they have been conducting an RI/FS for both the Potter
10   Property and broader TWAAFA site pursuant to a request from Washington State
11   Department of Ecology. The RI/FS seeks to clarify the nature and source of
12   contamination and identify Ecology's preferred remedial actions to clean the soil. Dkt.
13   45, Gray Decl., ¶¶ 6,7; *Id*. Ex. B, at 4. The parties expect the entire study will be
14   complete by the end of 2024. Dkt. 44 at 6; Dkt. 49 at 5. Already by late May 2024, the
15   parties had collected nearly all of the data that Ecology requested. Dkt. 45 ¶ 6. The sole
16   data collection work that remained outstanding was for the Potter Property, and it was
17   scheduled[1] to be completed by the end of August 2024. *Id*. The Potter Property work
18   focuses on assessing "tetrachloroethene (PCE) and trichloroethene (TCE)—chlorinated
19   solvents that are separate from the petroleum LNAPL." Dkt. 45 ¶ 6; *Id*. Ex. B, at 4. The

---

[1] As of the time of this order, the record does not provide the results of the Potter Property samples. No party has filed anything to suggest that the samples were not completed as scheduled in summer 2024.

parties have been actively meeting with Ecology at least once a month to discuss the RI/FS, and as of May 2024, they have been "reviewing and discussing potential remedial technologies and alternatives." Dkt 45 ¶ 7.

A bench trial is set to commence in November 2025. Dkt. 48. Burlington filed a motion to stay all proceedings until the completion of the RI/FS. Dkt. 44. Third-party defendants General Metals and Occidental filed a motion to dismiss Burlington's claims against them. Dkt. 34. For the reasons explained below, both motions are denied.

## II.  DISCUSSION

**A.  Burlington's motion to stay proceedings pending completion of the RI/FS is denied.**

Burlington seeks a stay of this case pending completion of the RI/FS . Dkt. 44. As noted, the parties anticipate the RI/FS will be completed by the end of 2024.

Courts weigh three factors to determine whether to grant a stay: (1) "the orderly course of justice measured in terms of the simplifying or complicating of the issues, proof, and questions of law which could be expected to result from a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the possible damage which may result from the granting of a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Burlington argues that all three factors support a stay here. Dkt. 44. Regarding the first factor, it asserts that a stay will conserve judicial resources because "the RI/FS will clarify the nature, extent, and source of contamination and identify Ecology's preferred remedial actions, rendering any discovery or litigation about these issues unnecessary."

1 | *Id*. at 2. For the second factor, it argues that denying a stay "could prejudice the parties by
2 | resulting in inconsistent outcomes." *Id*. It explains that the RI/FS "will analyze the extent
3 | and nature of other contaminants on the Potter Property in addition to LNAPL," and that
4 | it "may recommend a combined remedy to address multiple contaminants." *Id*. It argues
5 | that "the current trial schedule does not accommodate the timeline for the approval of the
6 | RI/FS" because "Ecology may require revisions or the submittal of additional reports"
7 | and therefore "the current discovery deadlines will likely be too close to, or may even fall
8 | after Ecology's approval of the RI/FS." Dkt. 54 at 8. Finally, regarding the third factor,
9 | Burlington argues that a stay will not harm the Port because it asserts the Port's claims
10 | primarily concern money damages. *Id*. at 2–3.

11 | Occidental supports Burlington's request for a stay. Dkt. 47. It believes that a stay
12 | "could help clarify the issues involved in this case, including those raised in the third-
13 | party complaint in the event that the Court does not grant the motion to dismiss." *Id*. at 2.

14 | The Port of Tacoma opposes a stay. Dkt. 49. It asserts that a stay will not aid in
15 | judicial economy because the "Court, not Ecology, allocates liability for contamination."
16 | *Id*. at 3. It refutes Burlington's argument that the Port seeks primarily money damages
17 | and that it therefore will not suffer harm from a stay. It contends that it instead "seeks
18 | declaratory relief in the form of a judicial allocation of the parties' responsibility in
19 | percentages – *not dollars* – for contamination" and argues the RI/FS "will not assist this
20 | Court in this task." *Id*. at 9. It points to the fact that the property has already been
21 | extensively studied and sampled for contamination over the past 40 years to support its
22 |

argument that Burlington is needlessly attempting to delay its eventual need to fund a portion of the remediation with its motion to stay. *Id*. at 2.

The Port emphasizes that the timing of the completion of the RI/FS in relation to the trial date weighs against granting a stay. Because there is almost a year between when the study will be completed around December 2024 and when trial starts in November 2025, the Port argues Burlington has "plenty of time to evaluate the RI/FS if it wants to do so and provide it to its expert witnesses" without a stay. *Id*. at 12. The Port asserts that Burlington will have even longer to prepare to address the specific "'data gaps' upon which Burlington hinges its motion" because those eight vapor samples of the Potter Property will have been collected in August 2024. *Id*. at 6. Finally, the Port argues that denying the stay has the added benefit of facilitating more expeditious cleanup because, if the Court decides liability, the cleanup is less likely to be delayed by litigation when the RI/FS is completed. *Id*. at 4.

The Court concludes that on balance, the relevant considerations weigh against a stay until the completion of the RI/FS. First, a stay will not necessarily facilitate an "orderly course of justice." The primary task before the Court is to determine the percentages of liability that each party bares, if any. Although the Court is not prepared to embrace the Port's position that the RI/FS will not assist the Court at all in this task, all parties as well as Ecology acknowledge that determining liability is solely within the purview of the Court.

The second factor weighs most heavily against a stay. Burlington cannot meet its burden to show that it will suffer "hardship or inequity" if it is required to move forward

without a stay. *See CMAX, Inc.,* 300 F.2d at 268. It has more than a year before trial to address the eight vapor samples collected in August 2024 that its motion focuses on, and nearly a year before trial to address the complete RI/FS.

The third factor, "the possible damage which may result from the granting of a stay," also weighs against a stay here. *CMAX, Inc.,* 300 F.2d at 268. If the Court grants a stay, it risks delaying action on the coming remediation plan. The parties should have a remediation plan to propose to Ecology by the end of the year. Expeditious resolution of liability allows the parties to act on a remediation plan without the risk of delay from protracted liability litigation. Given the timing of the RI/FS's completion in relation trial, this case does not present "rare circumstances" that warrant a stay. *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936). Burlington's motion to stay proceedings pending the completion of the RI/FS is **DENIED**. If Ecology requires follow-up reports to the RI/FS that may impact the liability of the parties in this litigation, Burlington is welcome to file another motion.

**B.     The Third-Party Defendants' motion to dismiss is denied without prejudice.**

Third-party defendants General Metals and Occidental move to dismiss Burlington's complaint against them pursuant to Federal Rules of Civil Procedure 12(b)(6) and 14. Dkt. 34.

**1.     Rule 12(b)(6) Standard**

Dismissal under Federal Rule of Civil Procedure 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

1988). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although courts must accept as true the complaint's well-pled facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When granting a Rule 12(b)(6) motion to dismiss, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, when the facts are not in dispute and the sole issue is whether there is liability as a matter of substantive law, courts may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

### 2. Rule 14 Standard

Federal Rule of Civil Procedure 14(a)(1) provides that "a defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it." "The crucial characteristic of a Rule 14 claim is that [an original] defendant is attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff." *Stewart v. Am. Int'l Oil & Gas Co.,* 845 F.2d 196, 200 (9th Cir. 1988) (quoting 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1446, at 257 (1971 ed.)). It is not enough that the third-party claim is "simply related" to the original claim. *Id.* The purpose of Rule 14 is to avoid duplicative litigation and to encourage judicial efficiency by trying claims against third parties who may be derivatively liable to the original defendant for all or part of the plaintiff's original claim. *See Southwest Admin., Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986).

In deciding whether to grant impleader, courts in the Ninth Circuit consider the *Irwin* factors: "(1) prejudice to the original plaintiff; (2) complication of issues at trial; (3) likelihood of trial delay; and (4) timeliness of the motion to implead." *Jorgensen Forge Corp.*, 14-cv-1524-JCC, 2015 WL 12030118, at *1 (W.D. Wash, Apr. 21, 2015) (citing *Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1056 (N.D. Cal. 2000)).

### 3. Parties' Arguments and Analysis

Third-party defendants General Metals and Occidental urge the Court to dismiss Burlington's third-party complaint against them. Dkt. 34. They argue the Port's Complaint against Burlington does not plead contamination at the Potter Property from

auto fluff or lime waste allegedly associated with them as third-party defendants. They assert that the Port instead "pled a very specific claim" alleging that Burlington is responsible for the costs of cleaning only LNAPL from the soil and only on the Potter property. *Id*. at 2. To the extent that there is auto fluff or lime waste in the soil in the TWAAFA area outside of the Potter Property, they argue it is irrelevant to the Port's claims against Burlington and therefore cannot support Burlington's third-party claims against them. *Id*. at 3. In sum, they argue that because Burlington's third-party complaint does not "aver facts to suggest that General Metals or Occidental were responsible for the LNAPL at issue," the Court should dismiss the third-party complaint. *Id*. If the Court disagrees and declines to dismiss it, General Metals and Occidental argue that "it should nonetheless order Burlington to amend its Third-Party Complaint to expressly isolate its claims to LNAPL contamination and not auto fluff or lime waste." Dkt. 56 at 6. Finally, if the Court denies the motion to dismiss the Third-Party Complaint without prejudice, General Metals and Occidental argue it should sever the third-party claims from the Port's claims against Burlington. *Id*. at 13.

      Burlington opposes dismissal or severance of its third-party claims against General Metals and Occidental. Dkt. 53. It argues that the Port seeks relief for remediation of "hazardous substances" at the Potter Property and does not limit its claims against Burlington to LNAPL. *Id*. at 5. It asserts that the Potter Property contains commingled contamination from hazardous substances including "from auto fluff and lime solvent sludge from operations by General Metals and by Occidental's predecessor." *Id*. Burlington argues further that dismissing its crossclaims would "result in significant

prejudice to Burlington and a risk of inconsistent decisions if Ecology recommends a combined remedy for the Potter Property to address multiple contaminants, some of which are attributable to Third-Party Defendants." *Id*. at 7. Finally, if the Court dismisses the third-party complaint, Burlington seeks leave to amend it. *Id*. at 11.

The Court concludes that Burlington's third-party complaint against General Metals and Occidental is sufficient under both Rule12(b)(6) and Rule 14. The language of the Port's complaint against Burlington leaves open the possibility that Burlington could face liability for remediation of hazardous substances beyond LNAPL within the Potter Property. Although the Port's complaint undoubtably focuses on LNAPL, Burlington correctly observes that the Port did not explicitly rule out liability for contamination from auto fluff or lime waste in its complaint. Indeed, the Port's complaint acknowledges that Ecology concluded that there are "comingled" hazardous substances in portions of the broader TWAAFA site. Dkt. 1 at 8–9. And Ecology made clear that it believes there is a possibility of comingled contamination on the Potter Property. Dkt. 45 at 8. The potential for commingled contamination that could include auto fluff or lime solvent within the Potter Property has yet to be determined. Ecology ordered testing for contaminants there beyond LNAPL. *Id*. at 3. The Port acknowledged that auto fluff and lime waste had been transported to the TWAAFA site, but denied knowing whether auto fluff and lime waste were deposited on the Potter Property. Dkt. 21 at ¶¶ 15-16, 18 & 23. Again, the record suggests that Ecology should have taken the necessary samples in August 2024. Dkt. 45 ¶¶ 6–7.

At this juncture, allowing the third-party complaint to proceed best serves the purposes of Rule 14 to avoid duplicative litigation and to encourage judicial efficiency. The Port's complaint seeks remediation for ridding the Potter Property soil of hazardous substances. Dkt. 1 at 11. Adjudicating the claims against General Metals and Occidental who may be derivatively liable to Burlington for part of the Port's original claims against Burlington best serves the goal of judicial efficiency.

The *Irwin* factors similarly support allowing the third-party claims to proceed. Regarding the first factor—prejudice to the original plaintiff— there is minimal, if any, prejudice to the Port in allowing Burlington to allocate liability for remediation of the Potter Property soil resulting from other hazardous substances. The Port argues in its answer to the third-party complaint "that Burlington should not benefit from its efforts to expand the Port's case to other properties and different contaminants." Dkt. 38 at 2. Its preference that its opposing party not "benefit" from third-party claims does not constitute prejudice. Furthermore, its concern that third-party claims would expand the property at issue is baseless. Burlington clarified that it seeks to share remedial action costs with regards to only the Potter Property, not the broader TWAAFA site. Dkt. 53 at 7.

The second factor—complication of the issues at trial—is, at least partially, a necessary consequence of the third-party claims. Indeed, each contaminant will undoubtably require a unique explanation to the trier of fact. Nevertheless, the core issues underlying the determination of liability for contamination at the Potter Property are the same for all the claims. This factor weighs in favor of impleader.

The third factor—likelihood of trial delay—does not weigh in favor of dismissal here. Because the parties have more than a year before the trial with the Potter Property samples, there is no credible indication that allowing the third-party claims will delay trial.

Finally, all parties concede that the fourth factor—timeliness of the motion to implead—is a non-issue. Burlington did not delay in bringing its third-party claims.

For similar reasons, the Court concludes that bifurcation is not warranted under Rule 14(a). Given the common nucleus of facts between the claims, bifurcation would be counterproductive to judicial economy. Allowing all the claims regarding liability for soil contamination at the Potter Property to proceed at the same time regardless of whether those claims are third-party claims or not is the most efficient use of judicial resources in this case. The Court is not persuaded that bifurcation would save time or prevent confusion.

### III.  ORDER

Burlington's motion to stay, Dkt. 44, is **DENIED**. General Metals and Occidental's motion to dismiss Burlington's third-party complaint, Dkt. 34, is **DENIED**. The third-party defendants' request to sever the claims against them from the Port's claims against Burlington is also **DENIED**.

**IT IS SO ORDERED**.

//

//

//

Dated this 24th day of September, 2024.

_____
BENJAMIN H. SETTLE
United States District Judge

ORDER - 14